IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF KANSAS

VICKY A. TUTTLE,

        Plaintiff,

vs.                             **Case No. 03-4139-RDR**

EATS AND TREATS
OPERATIONS, INC.,

        Defendant.

---

### MEMORANDUM AND ORDER

This is an employment discrimination action which is before the court upon defendant's motion for summary judgment and plaintiff's motion for partial summary judgment. According to the pretrial order, plaintiff alleges three categories of claims: 1) that defendant has retaliated against her for exercising her rights to workers' compensation; 2) that defendant retaliated against plaintiff for making an OSHA (Occupational Safety and Health Administration) complaint against defendant; and 3) that defendant has violated plaintiff's rights under the Family Medical Leave Act, 29 U.S.C. § 2601.

Summary judgment standards

Summary judgment is proper if it is demonstrated that the movant is entitled to judgment as a matter of law on the basis of facts to which there is no genuine dispute. The court must

determine "whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will . . . preclude summary judgment." Id. at 248. There are no genuine issues for trial if the record taken as a whole would not persuade a rational trier of fact to find for the nonmoving party. Matsushita Elec. Indust. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). The court may not act as the jury and determine witness credibility when it examines the record upon a summary judgment motion. Windon Third Oil and Gas v. Federal Deposit Ins., 805 F.2d 342, 346 (10th Cir. 1986) cert. denied, 480 U.S. 947 (1987). The evidence and all reasonable inferences therefrom are construed in the light most favorable to the nonmoving party. Spaulding v. United Transp. Union, 279 F.3d 901, 904 (10th Cir.) cert. denied, 537 U.S. 816 (2002).

### Uncontroverted facts

The following recitation includes facts which are uncontroverted for the purposes of the motions before the court. It also includes contentions supported by evidence which must be accepted when looking at the record in the light most favorable

to the nonmoving party.

    Defendant is a Kansas corporation which is a lease operator of a Dairy Queen restaurant in Eudora, Kansas. Defendant's president is Steven M. Walter. Plaintiff was employed by defendant at the restaurant from April 1996 to July 2001. She was an assistant manager during a large portion of this period.

    Defendant conducted interviews for the position of general manager of the restaurant in August or September 2000. Plaintiff was considered for the position, but defendant hired Ron Wroczynski for the job. This did not please plaintiff.

    Plaintiff sustained an injury when she fell at work in February 2001 and another workplace injury from an electrical shock around March 20, 2001. Plaintiff filed a complaint with OSHA after suffering the electrical shock.

    A meeting was held on March 3, 2001 after an incident in which Wroczynski allegedly assaulted an employee. At the meeting, Mr. Walter addressed the employees of the Eudora Dairy Queen. He yelled at everyone and told them that their jobs were on the line. He stated that he had two pending workers' compensation claims against him and that he was losing money. As he said this he was looking directly at plaintiff, according to plaintiff's deposition testimony. Mr. Walter testified in his deposition that he did not hold any animus toward plaintiff

because of her workers' compensation claim; rather, he was frustrated with a dysfunctional management team and with the employee safety problems which were leading to workers' compensation claims.

Plaintiff filed a workers' compensation claim regarding the injuries she suffered in February and March some time after the meeting Mr. Walter had with the employees.  Plaintiff had a previous workplace injury in November 1998 for which she also made a workers' compensation claim.

Defendant received notice of the alleged OSHA deficiency on or about April 20, 2001.

On May 1, 2001 Mr. Walter had a meeting with plaintiff.  He reprimanded plaintiff for tardiness, excessive absences, overall attitude and discussing company matters outside of work. Plaintiff told Mr. Walter that the absences were required by her workplace injuries.  Defendant contends that plaintiff had been cleared for work and that the injuries did not justify plaintiff's lateness and absenteeism.

In April, May and July 2001, the restaurant was cited by the Kansas Department of Agriculture for unsatisfactory bacterial and coliform counts in the ice cream machines.  This led to a written notice, dated July 16, 2001, from International Dairy Queen, Inc. that franchise privileges could be terminated at

several locations operated by the restaurant's franchisee. About this time, defendant was receiving customer complaints concerning cleanliness and mismanagement. Employee turnover was considered too rapid, and the business was unprofitable and at risk of closing. Plaintiff asserts that she was not at fault for these problems.

Plaintiff was in the hospital from about July 14, 2001 to July 16, 2001 for symptoms she attributed to the electric shock she suffered on March 20, 2001.

In mid-July 2001, the entire management staff of the restaurant was terminated. This included Ron Wroczynski, plaintiff and Darcy Davis, another assistant manager. Plaintiff was informed of her termination on July 18, 2001, shortly after she was dismissed from the hospital and a few days after the other members of the management staff were told that they were discharged.

Mr. Walter stated that plaintiff was at one time a good employee. Defendant asserts that this began to change after Wroczynski was hired as general manager. Plaintiff disagrees with that assessment.

When plaintiff was fired, Mr. Walter told plaintiff, "I shouldn't do this," but that too much had happened and she would be discharged. When plaintiff asked why she was being

terminated, Mr. Walter said that she had taken company matters outside the business, that she had been "squawking around here" and that she was not doing a good job. Mr. Walter said he had been advised not to fire plaintiff. Defendant's workers' compensation carrier had advised Mr. Walter that firing plaintiff would appear to be retaliation for her workplace injuries.

Mr. Walter knew that plaintiff was receiving medical treatment and physical therapy for her injuries, and that the injuries and treatment caused her to be absent from work from time to time. Mr. Walter also knew that the OSHA complaint was filed by plaintiff. As a result of the complaint, OSHA required defendant to make electrical repairs. Thereafter, according to plaintiff, Mr. Walter was bitter and rude towards her.

Mr. Walter stated to OSHA that part of the reason he fired plaintiff was her numerous requests for personal time off and numerous requests for time off for medical appointments for what she claimed were work-related injuries. He assumed it might look like OSHA retaliation when he fired plaintiff.

<u>Plaintiff's state law claims</u>

Plaintiff alleges that she was fired in retaliation for suffering workplace injuries and filing workers' compensation claims and because she made an OSHA complaint. These are state

law causes of action based upon established exceptions to the Kansas employment-at-will doctrine.

The elements for a prima facie case of workers' compensation retaliation are: 1) that plaintiff filed a claim for workers' compensation benefits or suffered an injury for which a claim might be asserted in the future; 2) that the employer had knowledge of this; 3) the employer terminated plaintiff's employment; and 4) that a causal connection existed between the protected activity or injury and the termination. Rebarchek v. Farmers Co-op Elevator, 35 P.3d 892, 899 (Kan. 2001).

The elements for an OSHA or whistleblowing retaliation claim are: 1) that a reasonably prudent person would conclude that the employer was engaged in activities in violation of regulations pertaining to public health, safety and general welfare; 2) that the employee reported such a violation with a good faith concern regarding the alleged violation; 3) that the employer had knowledge of the employee's report of the violation; and 4) the employee was discharged in retaliation for making the report. Goodman v. Wesley Medical Center, 78 P.3d 817, 821 (Kan. 2003) (quoting Palmer v. Brown, 752 P.2d 685, 690 (1988)). These elements must be proven by clear and convincing evidence. Id.

If a prima facie case of either form of retaliation is

established by a plaintiff, then the employer bears the burden of producing evidence that the employee was terminated for a legitimate nondiscriminatory reason. Goodman, 78 P.3d at 821; Rebarchek, 35 P.3d at 898-99. If the employer's burden of production is satisfied, then the burden shifts back to the plaintiff to produce evidence that the employer's motives were pretextual. Goodman, 78 P.3d at 821; Rebarchek, 35 P.3d at 901. Specific facts disputing the employer's alleged motive for termination must be asserted by the plaintiff to avoid summary judgment. Goodman, 78 P.3d at 821.

Defendant's first argument for summary judgment is that plaintiff cannot establish a causal link between her termination and her workplace injuries, workers' compensation claim or OSHA complaint. Therefore, defendant asserts that plaintiff cannot establish a prima facie case of retaliation. The court rejects this contention.

There are several points which, viewing the record in the light most favorable to plaintiff, provide sufficient support for the necessary causal link. First, there is some measure of temporal proximity. Plaintiff was fired within three months of defendant's notice of the OSHA complaint. She was fired within four months of her last workplace injury. Plaintiff alleges that her absences because of her injuries continued through the

months leading up to her termination.  In fact, plaintiff was terminated shortly after she was released from the hospital for health problems she asserts were related to her workplace injuries.  Plaintiff received a warning for excessive time off, even though she alleges this time off was needed to recover from her injury.  Plaintiff received a warning for discussing company matters outside of work, which plaintiff construed as a reference to her OSHA complaint.  Plaintiff testified that Mr. Walter also mentioned this when he informed plaintiff that she was being terminated.[1]  Mr. Walter also stated that excessive absenteeism was one of the reasons plaintiff was terminated. While he does not attribute the absenteeism to plaintiff's injuries, the reason for the absenteeism appears to be a material issue of fact.  There is also evidence that Mr. Walter spoke angrily to his employees regarding, inter alia, workers' compensation claims.

A prima facie case is not an "onerous burden" in this type of case.  Rebarchek, 35 P.3d at 901 (quoting Robinson v. Wilson Concrete Co., 913 F.Supp. 1476, 1483 (D. Kan. 1996)).  We believe on the basis of the foregoing points that plaintiff has

---

[1] Mr. Walter testified that he was referring to a complaint plaintiff made to International Dairy Queen headquarters.  We consider his motivation a material issue of fact and, for the purposes of defendant's summary judgment motion, construe the record in the light most favorable to the nonmovant.

satisfied the burden of demonstrating a prima facie case of retaliation on both of her state law claims.

Defendant next argues that summary judgment is warranted because it had numerous legitimate reasons for discharging plaintiff. Defendant asserts that plaintiff was fired because plaintiff was repeatedly tardy or absent and had an overall poor attitude. According to defendant, the discharge decision was also made because plaintiff repeatedly clashed with her supervisor, Mr. Wroczynski, and the restaurant had problems with employee turnover and infighting. Additionally, defendant notes that the restaurant was cited three times by the State of Kansas for sanitary concerns and that profits were down. This led International Dairy Queen to threaten to terminate defendant's franchise rights.[2] In sum, defendant contends that it fired the entire management staff because of these problems and would not have done so simply to retaliate or discriminate against plaintiff.

Plaintiff refers to evidence that she was a good employee and disclaims responsibility for the sanitary problems with the ice cream machines. She blames some of the friction at the restaurant on her supervisor and his unwillingness to

---

[2] These rights actually belonged to Mr. Walter's father's company, "I.C. Walter Enterprises, Inc.", which leased the Eudora Dairy Queen franchise to defendant.

10

accommodate plaintiff's needs to recuperate from her workplace injury. She also cites the statements of Mr. Walter concerning plaintiff's absenteeism and discussing company matters outside the business. Plaintiff contends these statements may be construed as direct evidence of retaliatory intent.

A plaintiff may establish pretext "either directly by persuading the court that a discriminatory reason more likely [than not] motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 256 (1981). We believe plaintiff has presented sufficient direct and indirect evidence in this instance to create a material issue of fact as to whether defendant's alleged grounds for terminating plaintiff are a pretext for illegal retaliation. See Horizon Holdings v. Genmar Holdings, 241 F.Supp.2d 1123, 1140-41 (D.Kan. 2002) (denying summary judgment on a discrimination claim where defendant asserted plaintiff and others were fired as part of an ineffective senior management team but there was alleged direct evidence of discriminatory animus).

Family Medical Leave Act

The Tenth Circuit discussed FMLA claims in Smith v. Diffee Ford-Lincoln-Mercury, Inc., 298 F.3d 955, 960 (10th Cir. 2002).

> Employees are authorized under 29 U.S.C. § 2617(a) to bring an action to recover damages for violations of § 2615.  Courts have recognized two theories for recovery on FMLA claims under § 2615, the retaliation or discrimination theory and the entitlement or interference theory.  The retaliation or discrimination theory arises from § 2615(a)(2), which provides that "[i]t shall be unlawful for any employer to discharge or in any other manner discriminate against any individual for opposing any practice made unlawful by this subchapter."  The entitlement or interference theory arises from § 2615(a)(1):  "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided in this subchapter."

In this case, the pretrial order indicates that plaintiff is asserting an interference <u>and</u> a retaliation theory.  Plaintiff also claims a "continuing violation" which the court construes as an argument against a statute of limitations defense.

Defendant's argument against both of plaintiff's FMLA claims is that plaintiff was fired for legitimate reasons independent of her health condition and need to take leave.  These reasons, of course, are those defendant has asserted in connection with plaintiff's state law claims.  Defendant contends, for example, that plaintiff had a poor attitude and problems getting along with her supervisor.  Defendant further asserts that the store's management team was "sub-par," there were sanitation citations, and the store was at risk of being closed.  Plaintiff's responses are the same as well.  Plaintiff asserts that she was a good employee; that she was not responsible for the sanitation

citations; that her supervisor was responsible for the staff friction within store; and that defendant directly stated that plaintiff's health-related absenteeism was a factor which led to her termination.

There are material fact issues regarding whether plaintiff was discharged for reasons that violate the FMLA. Therefore, the court shall deny defendant's request for summary judgment on this claim.    Back pay and fringe benefits

Defendant contends that plaintiff cannot prevail upon a claim for back pay and fringe benefits because she has failed to seek employment after being discharged by defendant. Defendant, however, admits that plaintiff has had employment since her termination.

A reasonableness standard is applied to contentions that a plaintiff has failed to mitigate damages. See Minshall v. McGraw Hill Broadcasting Co., 323 F.3d 1273, 1287 (10th Cir. 2003); Wagher v. Guy's Foods, Inc., 885 P.2d 1197, 1216 (Kan. 1994). The burden is on the employer to establish the lack of reasonable diligence. Spulak v. K Mart Corp., 894 F.2d 1150, 1158 (10th Cir. 1990). Numerous factors are potentially relevant. After our review of the record on summary judgment, the court believes a material issue of fact remains as to whether plaintiff has mitigated her losses in this matter. See

13

Praseuth v. Newell-Rubbermaid, Inc., 219 F.Supp.2d 1157, 1195 (D.Kan. 2002) (denying summary judgment on mitigation issue where defendants alleged plaintiff made very limited attempts to obtain employment).

Plaintiff's motion for partial summary judgment

Plaintiff's motion asks for summary judgment in her favor on the issue of liability upon her state and federal claims. The court agrees with defendant's response to the motion. In light of the facially neutral reasons given for the relevant employment actions and the evidence supporting those reasons, the court cannot conclude that plaintiff is entitled to judgment as a matter of law on the issue of liability when the summary judgment record is viewed in a light most favorable to the nonmovant.

Conclusion

In conclusion, the court shall deny defendant's motion for summary judgment and plaintiff's motion for partial summary judgment.

**IT IS SO ORDERED.**

Dated this 23rd day of May, 2005 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge